OPINION OF THE COURT
Jasen, J.
The issue on this appeal is whether the provisions of the separation agreement entered into between the decedent and his second wife are “wholly inconsistent” with the terms of the decedent’s will so as to cause a revocation of the testamentary dispositions in her favor pursuant to EPTL 3-4.3. In order to resolve this question, we are required to reconsider this court’s decision in Matter of Hollister (18 NY2d 281).
The essential facts are not in dispute. Decedent’s first marriage to Laura Maruccia produced two children, Bar *200 bara and Dorothy. After divorcing Laura, decedent married Ethelyn Maruccia, the petitioner herein, on" February 3, 1957, and this marriage produced two daughters as well, Camille and Marianne.
On June 24, 1966, decedent executed his last will and testament. Desiring to preclude his first wife, Laura, from receiving any part of his estate, decedent provided in article second of his will that if Laura was entitled to exercise a right of election as his surviving spouse, she was to receive the minimum statutory allowance. (See EPTL 5-1.1.) Under article third, decedent bequeathed all his stock in his real estate corporation to petitioner and also bequeathed, in five equal shares, his half interest in a real estate partnership along with his interest in a second mortgage to his four daughters and petitioner. In article seventh, decedent appointed petitioner and a friend, Dr. Murray Jonas, as executors and trustees under the will. The rest of decedent’s estate was to pass under article eighth in five equal shares to petitioner and the four children.
On June 1, 1976, nearly 10 years after decedent executed his will, petitioner and decedent entered into a separation agreement. Among other things, this agreement provided that decedent was to make certain payments to petitioner through 1981, assign to her his 200 shares of common stock in the First National Bank of Florida, and acknowledge that a mortgage on certain New York realty belonged solely to petitioner. For her part, petitioner was required to transfer to decedent certain stock in decedent’s real estate corporation, execute a quitclaim deed in decedent’s favor covering certain Florida realty, and assign to decedent her interest in their joint bank account and certificate of deposit.
The separation agreement also contained a general release found in article twelfth. Because of its importance to this appeal, article twelfth is set forth in its entirety: “twelfth : Except as hereinbefore stated, each party hereto releases and relinquishes to the other party all claims or rights which may now exist or hereafter arise by reason of the marriage between the parties with respect to any property, whether real or personal, belonging to such other party and, without limiting the foregoing, each party hereby *201 waives and releases to the other party all right to share in any of the property or estate of such other party which has arisen or may hereafter arise by operation of the law or otherwise, and hereby specifically waives and releases all right of dower or curtesy, or rights in lieu thereof, and all rights to share in the estate of the other party under the intestacy laws of any jurisdiction and all right of election to take against (a) any Last Will and Testament of such other party whether executed prior or subsequent to the execution hereof or (b) any testamentary substitute or inter vivos transfer made by the other party and all right to administer the estate of such other party.”
The separation agreement was not filed with the clerk of Supreme Court until August 1, 1977. Neither party obtained a divorce, and, on October 28, 1977, Alfred Maruccia died. During the 17 months that elapsed between the time the separation agreement was signed and his death, decedent did not execute another will, nor did he alter any of the provisions of the 1966 document.
On November 7,1977, petitioner and Dr. Jonas presented the 1966 will for probate, and petitioner was issued preliminary letters testamentary. While the probate proceeding was pending, objections were filed by decedent’s first wife and the two children of the first marriage, all appellants herein, challenging petitioner’s status as executor and beneficiary of decedent’s estate on the ground that she had waived her rights under the will by entering into the separation agreement with the decedent. Appellants then moved for summary judgment seeking a determination that all the testamentary dispositions in petitioner’s favor and the provision appointing her as executor and trustee had been revoked by the separation agreement. Petitioner, joined by her two daughters, made a cross motion for summary judgment seeking a determination that the release clause of the separation agreement did not vitiate any of the terms of decedent’s will as to petitioner.
The Surrogate, relying primarily on this court’s decision in Matter of Hollister (18 NY2d 281, supra), found the language employed in the separation agreement to be “wholly inconsistent” with the testamentary dispositions in peti *202 tioner’s favor and held such provisions revoked. The court admitted decedent’s will to probate, revoked the preliminary letters testamentary issued to petitioner, and ordered that letters testamentary would issue to Dr. Jonas upon his duly qualifying as executor and trustee.
On appeal, a unanimous Appellate Division reversed, on the law, and struck the decretal paragraphs from the Surrogate’s decree revoking the testamentary dispositions in petitioner’s favor and the preliminary letters issued to her. According to the court below, “[t]he provisions of the separation agreement were not ‘wholly inconsistent’ with the voluntary bequests and appointnment in the second wife’s favor set forth in the will. The provisions of the separation agreement dealt merely with waiver of statutory rights, which upon the husband’s death might benefit his second wife.” (78 AD2d, p 323.) We affirm.[1]
Restating the principles formerly embodied in sections 39 and 40 of the Decedent Estate Law, EPTL 3-4.3 provides : “A conveyance, settlement or other act of a testator by which an estate in his property, previously disposed of by will, is altered but not wholly divested does not revoke such disposition, but the estate in the property that remains in the testator passes to the beneficiaries pursuant to the disposition. However, any such conveyance, settlement or other act of the testator which is wholly inconsistent with such previous testamentary disposition revokes it.” (Emphasis supplied.)[2] This statute serves a two-fold purpose in *203 that any alteration in the testator’s interest in a previously devised or bequeathed asset will not work a revocation, but a conveyance or other act which is entirely inconsistent with the prior testamentary disposition will cause it to be revoked. (See, generally, 9 Rohan, NY Civ Prac, par 3-4.3.) We are concerned here with that aspect of EPTL 3-4.3 which provides for revocation by a subsequent, “wholly inconsistent” instrument.
A number of lower courts have considered the effect of a separation agreement on a prior testamentary disposition in favor of a spouse. The results reached often depended upon the particular facts of each case. In approaching the question whether a separation agreement is “wholly inconsistent” with a prior devise .or bequest, some courts have focused solely on the language employed by the parties in the general release clause, and yet have come to opposite conclusions while construing essentially identical provisions. (Compare, e.g., Matter of Nelson, 51 Misc 2d 375; Matter of Swords, 120 Misc 427, affd 208 App Div 852, with Matter of Shack, 207 Misc 953; see, also, Schoonmaker v Crounse, 261 App Div 77; Titus v Bassi, 182 App Div 387.) Other courts have looked to the relationship between and conduct of the parties, both before and after executing the separation agreement, in order to ascertain whether there was a revocation. (E.g., Matter of Ga Nun, 200 Misc 789, affd 279 App Div 982; Matter of Gilmour, 146 Misc 113.) To say the least, these cases are not easily reconciled.
In Matter of Hollister (18 NY2d 281, swpra), this court was presented with an opportunity to decide whether a general release clause in a separation agreement revoked a prior testamentary disposition in favor of the testator’s husband. The clause provided that the husband released “ ‘any and all right, title and interest in and to the property or estate of the Wife (whether now owned or hereafter acquired), her executors and administrators, heirs at law and pext of kin, which the husband now has or may have’ including any right to take against her will under section 18 *204 of the Decedent Estate Law.” (18 NY2d, at p 286.) This language was found to be “inconsistent with the survival of the testamentary gifts to the husband.” (18 NY2d, at p 286.) In reaching this conclusion, this court placed primary reliance on Matter of Silberstein (108 NYS2d 88, 92), in which Surrogate Savárese stated: “Where separation agreements have been held to be wholly inconsistent with the provisions of a precedent testamentary instrument the parties either expressly provide for a release or waiver of all rights and interests in the estate of each other or used language from which such an intent could reasonably be implied.” However, as noted by the concurring opinion, the Hollister majority did not actually decide what language in a separation agreement has the effect of revoking a prior testamentary disposition. (18 NY2d, at p 287 [Keating, J., concurring].)
More recently, in Matter of Coffed (46 NY2d 514), this court was confronted with the question whether reciprocal wills had been revoked by a general release signed by the decedent. Noting that the holding in Hollister was inapplicable to the situation in Coffed inasmuch as the bequests to the testator’s spouse had been automatically revoked by divorce (see EPTL 5-1.4), we further distinguished Hollister on the ground that the boilerplate language in the release executed by Mr. Coffed did not approach the more specific language used by the Hollisters. Finally, we stated that the continued viability of Hollister was “in doubt” in view of legislative action concerning the effect of a subsequent separation or divorce upon an existing disposition to a spouse. (46 NY2d, at p 520.) However, we did not reach this question because Hollister was distinguishable on its facts. We now address that issue.
The Legislature has adopted an elaborate scheme whereby the revocation of a will is to be effected with much the same formality as that required to make a valid will in the first instance. (See EPTL 3-4.1.) Although the provisions of EPTL 3-4.3 concerning the revocatory effect of separation agreements “wholy inconsistent” with prior testamentary dispositions continues to be the law, the Legislature may be said to have expressed its approval of both a narrow *205 construction by the courts of waiver clauses in separation agreements and the judicial inclination away from vitiating the statutory requirements governing the validity and amendment of wills. (Temporary State Commission on Modernization, Revision and Simplification of Law of Estates, Rep No. 8.2.5A, NY Legis Doc, 1966, No. 19, pp 744-745.) Indeed, the statute itself, by employing the term “wholly inconsistent”, supports a strict approach to implied revocations under EPTL 3-4.3. (Emphasis supplied; see Matter of Cote, 195 Misc 410.) In addition, this view is bolstered further by the practical recognition that “a solemn testamentary instrument should not be rendered ineffectual upon conjecture as to the motivation of a testator who in his lifetime had ample opportunity to revoke or to amend the instrument had he desired to do so.” (Matter of Torr, 17 Misc 2d 1063, 1065.)
With this is mind, we hold that in order for a separation agreement to have the effect of revoking a prior devise or bequest pursuant to EPTL 3-4.3, the agreement must either contain a provision whereby the spouse explicitly renounces any testamentary disposition in his or her favor made prior to the date of the separation agreement or employ language which clearly and unequivocally manifests an intent on the part of the spouses that they are no longer beneficiaries under each other’s wills. To the extent that Matter of Hollister indicates that a general waiver of rights “against the estate” of a spouse is sufficient to render the separation agreement “wholly inconsistent” with a prior devise or bequest or that revocation of a testamentary disposition may be reasonably “implied” from the language of a subsequent separation agreement, it is overruled.
In this case, the separation agreement does not contain any provision whereby petitioner renounced the voluntary bequests made to her by decedent. Rather, article twelfth merely provides for a relinquishment by petitioner of statutory rights arising from the marital relationship. Indeed, from the language found in article twelfth, it would seem that the parties deliberately avoided any reference to the voluntary bequests to and appointment of petitioner as executor under decedent’s will. The ambiguous phrases where *206 by petitioner waived and released all right to share in the decedent’s estate “which has arisen or may hereafter arise by operation of law or otherwise” and in which she gave up “all right to administer the estate” are alone insufficient to work a revocation of the provisions of decedent’s will. Under the criteria set forth earlier, a far clearer indication of decedent’s intent is required before it can be concluded that he desired to revoke a prior devise or bequest to his wife.
In conclusion, it should be noted that the holding in this case will have limited application. As noted earlier, in situations where execution of the separation agreement is followed by divorce or dissolution of the marriage, all prior testamentary dispositions to the former spouse will be revoked automatically by operation of law, unless the will provides otherwise. (EPTL 5-1.4.) Nor does this case affect the ability of a testator to provide for his or her estranged spouse in a will executed subsequent to the signing of a separation agreement which revoked prior testamentary dispositions pursuant to EPTL 3-4.3. In fact, the difficulty encountered in this case would have been avoided had the decedent’s will been amended to take into account the change in the relationship with his second wife. In the words of one commentator, “sound practice would indicate that whenever parties are legally separated or divorced, the client’s will should be amended to reflect the changed circumstances and revised plan of testamentary dispositions.” (Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-4.1, p 526.)
Accordingly, the order of the Appellate Division should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed, etc.

. In arriving at the conclusion that there was no revocation of the provisions of decedent’s will pursuant to EPTL 3-4.8, the court below employed the rule of interpretation of ejusdem generis to limit the effect of the language in the separation agreement whereby petitioner waived all rights to share in the estate “which [have] arisen or may hereafter arise by operation of law or otherwise.” (Emphasis supplied.) We need not address the propriety of the Appellate Division’s reliance on the ejusdem, generis rule because, under the standard we adopt in this case, the language of the separation agreement is insufficient to cause a revocation of the provisions of decedent’s will no matter what effect is given to the phrase “or otherwise”.

. Although EPTL 3-4.3 eliminates the reference in section 39 of the Decedent Estate Law by which the testator had to state in the nontestamentary instrument that he intended to revoke the prior devise or bequest (see Temporary State Commission on Modernization, Revision and Simplification of Law of Estates, Rep No. 8.2.5A, NY Legis Doc, 1966, No. 19, pp 751-752), EPTL 3-4.3 *203 retains the “wholly inconsistent” provision of section 40 of the Decedent Estate Law. Thus, a court is still required to determine whether an agreement is wholly inconsistent with and therefore revokes a prior testamentary disposition.